Filed 9/21/21  P. v. Salazar CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE, | B303834 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA081564-02) |
| v. | |
| MAGDALENO SALAZAR, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Robert Perry, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Magdaleno Salazar in 1999 of first degree murder with a true finding he had personally used a firearm and a principal was armed with a firearm during the offense. Salazar admitted a special-circumstance allegation that he had a prior murder conviction; the jury returned a verdict of death at the penalty phase of the trial; and the court imposed that sentence. The Supreme Court affirmed the judgment. (*People v. Salazar* (2016) 63 Cal.4th 214.)

In September 2019 Salazar filed a petition for resentencing under Penal Code section 1170.95.[1] The superior court, without first appointing counsel or inviting briefing, summarily denied the petition, finding that Salazar was "an actual killer" and had not made a prima facie showing he was entitled to relief.[2] Because the record of conviction establishes Salazar is ineligible for resentencing as a matter of law, any errors committed by the superior court were harmless. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Salazar's Trial for Murder*

The Supreme Court's opinion affirming Salazar's conviction and death sentence summarizes the evidence presented at trial. (*People v. Salazar, supra,* 63 Cal.4th at pp. 221-224.) In the early morning of July 25, 1993 Kathy Mendez and a friend met Salazar and Enrique Echeverria at a fast food restaurant. Salazar was wearing a white shirt; Escheverria a black shirt. Salazar, Escheverria and Mendez were members of the Harpys criminal street gang. Salazar drove the four of them to another fast food

---

[1] Statutory references are to this code.

[2] The superior court also ruled section 1170.95 is unconstitutional.

restaurant, the Yoshinoya Beef Bowl, on the fringe of Harpys territory that was sometimes frequented by members of other gangs.

Mendez heard Salazar and Echeverria say they needed to "take care of the neighborhood," and should not be "caught slipping." This meant they intended to control the restaurant as gang territory and not be caught unaware by rival gang members.

While Mendez waited in a line of customers, Salazar and Echeverria left the restaurant and stood just outside. As the door opened, Mendez heard Salazar tell Echeverria to get the "cuete," a slang term for a gun. Echeverria retrieved something from the car and put it in his waistband. Mendez then saw a shirtless man walk past the restaurant. Salazar and Echeverria confronted the man and began wrestling with him. Mendez heard gunshots and saw Salazar shooting in the direction of the Au Rendezvous cafe next door.

When the shooting stopped, Mendez went outside. Salazar was half-carrying Echeverria toward the car. Salazar was holding what looked like a nine-millimeter pistol. Salazar helped Echeverria into the car and drove away. Mendez went into the cafe where she saw the shirtless man lying face down. There was a lot of blood.

Emilio Antelo, the security guard at the Beef Bowl, was standing outside, between the Beef Bowl and the cafe, when a car pulled up and parked. A teenaged passenger got out of the car and entered the Beef Bowl. As the driver approached, Antelo prepared to stop him because the Beef Bowl's policy required customers to wear shirts. Antelo then heard a metallic sound, turned and saw a man cocking a pistol. The gunman walked past

3

Antelo and toward the shirtless man. Antelo heard another pistol being cocked and saw a second gunman approach the shirtless man, who appeared to be unarmed. Both guns were semiautomatic pistols. The gunmen said something to the shirtless man, which Antelo could not understand. Antelo went inside the Beef Bowl and then heard gunfire. When the shooting stopped, he told the cook to call the police, went outside and saw the shirtless man on the ground.

A third eyewitness, Patrick Turner, was walking past the Beef Bowl on his way to Au Rendezvous. Turner saw a small car drive up and park. The passenger went into the Beef Bowl, but the driver was confronted by two men, one wearing a white shirt, the other a black shirt. They asked him, "Don't I know you from somewhere?" The three men began arguing and scuffling. They wrestled with each other, moving into the cafe. The man in the black shirt stood in the doorway shooting. He and the man in white, who was limping, then went to a car and drove off. The black-shirted man was in the driver's seat.

Fifteen bullet casings were recovered, both inside and outside the cafe. Twelve were nine-millimeter, fired from the same gun; three were .25 caliber, fired from another weapon. Enrique Guevara, the shirtless man, had been shot nine times. There was no soot or stippling around the wounds, indicating they had been inflicted from a distance greater than two feet.

Echeverria testified for the defense. He told the jury he had shot and killed Guevara, had been convicted of the killing and was currently in prison. He said he and Salazar were standing outside the Beef Bowl when a car drove by. The occupants were "staring us down" and "looked like gang-bangers." Echeverria went to his car, retrieved a nine-millimeter

4

automatic, cocked it and placed it in his waistband.  The other car parked, and the passenger went into the Beef Bowl.  Salazar followed him inside.  The driver, who was shirtless, appeared to be "under the influence."  When the driver got out of the car, he displayed a .25-caliber automatic firearm and said something to Echeverria including the word "Trece," which Echeverria took as a gang reference.  Then the man began shooting.  Echeverria said he was shot three times.  As Echeverria reached for his gun, his assailant came closer and shot him three more times.  Echeverria grappled with the man and fired all 14 rounds in his clip as the two wrestled.  Echeverria fell on top of his attacker in the cafe.  Salazar appeared and helped him to the car.  Echeverria had dropped his gun, which Salazar retrieved.  The parties stipulated that Guevara had gunshot residue particles on his hands.

2. *Verdict, Sentence and Appeal*

The jury convicted Salazar of first degree murder (§ 187) and found true the allegations Salazar had personally used a firearm during the offense (§ 12022.5, subd. (a)) and a principal had been armed with a firearm during the offense (§ 12022, subd. (a)(1)).  Following the guilty verdict Salazar admitted the special-circumstance allegation that he had previously been convicted of first degree murder (§ 190.2, subd. (a)(2)).  After trial of the penalty phase the jury recommended a sentence of death.  The trial court, after reviewing the evidence relating to aggravating and mitigating circumstances, found the aggravating factors greatly outweighed the mitigating factors, determined the appropriate penalty was death and sentenced Salazar to death.

The Supreme Court affirmed the judgment in its entirety.  (*People v. Salazar*, *supra*, 63 Cal.4th at p. 221.)  As pertinent to the issue presented by Salazar's current appeal, the Court

5

rejected Salazar's argument the evidence was insufficient to establish his guilt of first degree murder, including his contentions the evidence was insufficient to show the killing was not justified by Echeverria's lawful self-defense or Salazar's defense of Echeverria; the evidence of malice was insufficient because the prosecution failed to disprove that he had acted in a sudden quarrel, under the heat of passion, in unreasonable self-defense or in mutual combat; and the evidence was insufficient to establish deliberation and premeditation. (*Id.* at pp. 242-245.) With respect to the proof of malice, the Court stated, "[T]he evidence strongly supported a finding that defendant acted as a deliberate aggressor in the confrontation." (*Id.* at p. 244.)

More generally, the Supreme Court explained, "The prosecution's theory was that Guevara had managed to wrestle the .25-caliber weapon away from Echeverria and shoot him several times, explaining the soot found on Guevara's hands. Thereafter, defendant shot at both men from the doorway of the Au Rendezvous. This theory was consistent with the shell casing evidence. It was supported by Mendez's testimony that defendant had a nine-millimeter weapon and Echeverria had his gun when they confronted Guevara. It was also consistent with Antelo's testimony that the men who approached Guevara outside the Beef Bowl carried guns while Guevara did not." (*People v. Salazar*, *supra*, 63 Cal.4th at p. 244.)

3. *Salazar's Section 1170.95 Petition for Resentencing*

On September 27, 2019 Salazar, representing himself, filed a petition for resentencing under section 1170.95. Checking boxes on the printed form petition, Salazar declared under penalty of perjury that he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural

6

and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Salazar requested appointment of counsel during the resentencing process.

The superior court summarily denied the petition on November 4, 2019 without appointing counsel for Salazar or inviting briefing by the prosecutor or Salazar. Briefly summarizing the commitment offense, the court stated, "A little after 2:30 a.m. on July 25, 1993, Salazar and a fellow gang member confronted a rival gang member outside the Yoshinoya Beef Bowl at Figueroa and 30th Streets in Los Angles and shot him to death." The court then stated, "As an actual killer in the 1993 murder, Salazar is ineligible for sentencing relief under Penal Code §§ 1170.95 and 189(e)(3)."[3]

---

[3]     The superior court also suggested in its order denying Salazar's petition that his conviction for a 1991 murder, which included a robbery-murder special-circumstance finding, was not subject to resentencing under section 1170.95. Salazar and the Attorney General agree that crime is not relevant to an analysis of Salazar's entitlement to resentencing relief for his conviction of the 1993 murder of Guevara.

As an independent ground for denying the petition, the court ruled Senate Bill 1437 and section 1170.95 are unconstitutional. The Attorney General does not contend Senate Bill 1437 and section 1170.95 are unconstitutional and does not argue on appeal that we should affirm the order denying Salazar's petition on that ground.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to

8

relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction." (*Lewis*, at p. 972.)[4]

The prima facie inquiry under subdivision (c), however, "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis, supra,* 11 Cal.5th 971, internal quotation marks omitted; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction "conclusively demonstrates" petitioner is ineligible for relief].)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and

---

[4]    While approving use of an appellate opinion as part of the petitioner's record of conviction when evaluating whether a prima facie showing has been made under section 1170.95, subdivision (c), the *Lewis* Court cautioned, "[T]he probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981.)

2. *The Error in Denying Salazar's Petition Without Appointing Counsel Was Harmless*

In *People v. Lewis*, *supra*, 11 Cal.5th 952 the Supreme Court, resolving a conflict among the courts of appeal and agreeing with the analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted November 10, 2020, S264684, held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c): "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at p. 963.) Because Salazar checked all the necessary boxes on his form petition, the superior court erred by denying his petition without first appointing counsel.

The *Lewis* Court, however, also held a superior court's failure to appoint counsel to represent a petitioner when

10

assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958, 973-974.) The Court explained, "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction. [Citations.] However, we have held that 'if a [habeas] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citation.] When 'an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him.' [Citations.] [¶] For the same reason, a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process. [Citations.] At this point, the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so." (*Id.* at pp. 32-33.)

As discussed in the following section, the record of conviction establishes Salazar is ineligible for relief under section 1170.95 as a matter of law. Because there is no reasonable probability Salazar would have obtained a more favorable result if counsel had been appointed and given the opportunity to file a memorandum supporting the petition, the court's error in failing to appoint counsel was harmless. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836 [an error violating only California law is harmless unless "it is reasonably probable

11

that a result more favorable to the appealing party would have been reached in the absence of the error"].)

3. *Salazar Is Ineligible for Resentencing as a Matter of Law*

Contending the superior court erred in concluding he had failed to make a prima facie showing of eligibility for resentencing under section 1170.95, Salazar emphasizes the court found he was "an actual killer," not "the actual killer," and explains the forensic evidence at trial was unclear whether the shots he had fired or those fired by Echeverria caused Guevara's death. "Under these facts," he argues, "it may be that appellant was found guilty as an aider and abettor to the actual killer but was not the actual killer." That may be, but under either scenario Salazar is ineligible as a matter of law for resentencing under section 1170.95: "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile, supra,* 10 Cal.5th at p. 848.)

Salazar also suggests the jury might have found he aided and abetted not Guevara's murder, but an assault on Guevara, the natural and probable consequences of which was Guevara's murder by Echeverria, a theory of accomplice liability for murder eliminated by Senate Bill 1437. Salazar explains his trial took place before the Supreme Court in *People v. Chiu* (2014) 59 Cal.4th 155, 158-159 (*Chiu*) held an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine and, therefore, his conviction could have been based on vicariously attributing to him the mental state of the actual killer (Echeverria).

The jury in Salazar's case, however, was not instructed he could be found guilty of murder under the natural and probable

12

consequences doctrine,[5] and the Supreme Court's opinion affirming his conviction for first degree premeditated murder confirms the case was tried on the theory that both Salazar and Echeverria shot at Guevara with the intent to kill him, regardless of which one of the two men fired the fatal shots. Moreover, although Salazar's trial took place before *Chiu* prohibited first degree premeditated murder convictions under the natural and probable consequences doctrine, the Supreme Court affirmed the judgment in his case two years after it had decided *Chiu*. It is inconceivable the Supreme Court would have affirmed a death sentence in a case in which there was a potential *Chiu* error.

In sum, the record of conviction indisputably demonstrates Salazar was convicted of Guevara's murder as the actual shooter or as a direct aider and abettor of the actual shooter, acting with

---

[5] On our own motion we augmented the record on appeal with the jury instructions from the guilt phase of Salazar's trial. (See Cal. Rules of Court, rule 8.340(c).) The court instructed the jury, using CALJIC No. 3.00, that one who aids and abets a crime is equally guilty of the offense as those who directly and actively commit the act constituting the crime and, using CALJIC No. 3.01, that an aider and abettor must act with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of encouraging or facilitating the commission of the crime. The court did not instruct with CALJIC No. 3.02, Principals—Liability for Natural and Probable Consequences, which stated in 1999 that one who aids and abets another in the commission of a crime "is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted." (CALJIC No. 3.02 (1997 rev.).)

malice aforethought in either case.  As such, he could still be convicted of murder notwithstanding Senate Bill 1437's amendments to sections 188 and 189, and he is ineligible as a matter of law for resentencing under section 1170.95.  The error in not appointing counsel before denying his petition was harmless.

## DISPOSITION

The postjudgment order denying Salazar's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

14